**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IAN GALLOWAY, | Civil Action No.: 23-3740 |
| *Plaintiff*, | |
| v. | **OPINION** |
| CITY OF WEST ORANGE et al., | March 28, 2025 |
| *Defendants*. | |

**SEMPER**, District Judge.

Before the Court are Defendants' Township of West Orange[1] ("West Orange"), West Orange Police Department ("WOPD"), Officer Gregory Willis, Joseph Wenzel, Dennis O. Dowd, J.M.C.'s[2] (collectively, "Township Defendants"), and Arthur J. Batista, J.S.C.'s ("Judge Batista," and together with the Township Defendants, "Defendants") motions to dismiss (ECF 48-1, "Township Br."; ECF 49-1, "Batista Br.") Plaintiff Ian Galloway's ("Plaintiff" or "Galloway") First Amended Complaint. (ECF 40-1, "FAC.") Plaintiff opposed the respective motions. (ECF 50-1, "Opp. to Batista MTD"; ECF 54-1[3], "Opp. to Township MTD.") Defendants filed replies. (ECF 55, "Township Reply"; ECF 56, "Batista Reply.") The Court considered Plaintiff's First Amended Complaint and the parties' submissions, and the motions were decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons

---

[1] Plaintiff's First Amended Complaint improperly named the "Township of West Orange" as the "City of West Orange Township." The Court will refer to this Defendant as the "Township of West Orange" or "West Orange."

[2] Plaintiff's First Amended Complaint improperly named Judge Dennis O. Dowd, J.M.C., as Judge Dennis O. Dowd, J.S.C. The Court will refer to this Defendant as "Judge Dowd."

[3] Plaintiff filed an opposition to the Township Defendants' motion to dismiss on August 11, 2024. (ECF 51.) In response to a letter from the Township Defendants' counsel noting Plaintiff's failure to comply with the page limit specifications set forth in Local Civil Rule 7.2(d), Plaintiff filed a shorter brief on August 13, 2024. (ECF 54.) The Court treats the later-filed brief (ECF 54) as operative for purposes of this opinion.

set forth below, Defendants' motions are **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[4]

### A.  Factual Background

This civil rights action arises from a 2019 traffic stop and related court proceedings arising from Plaintiff's alleged failure to stop at a stop sign, which Plaintiff alleges violated a myriad of his Constitutional and common law rights.

### i.    The Traffic Stop

Plaintiff is an African American man over the age of 50 who resides in Brooklyn, New York. (FAC ¶ 37.) On or about December 28, 2019, Plaintiff was driving his daughter to her home in West Orange, New Jersey (*id.* ¶ 39), when he was stopped by West Orange Police Department ("WOPD") officer Defendant Willis (the "Traffic Stop"). (*Id.* ¶ 41.) Plaintiff alleges that Officer Willis had no reason to pull Plaintiff over and did so only because Plaintiff is an African American man who was driving a car with out-of-state license plates. (*Id.* ¶¶ 46, 56, 57, 58.)

After making the stop, Officer Willis refused to identify himself and did not provide a reason for the stop when Plaintiff asked.  (*Id.* ¶¶ 44-45.) Because Officer Willis did not provide a reason for the stop, Plaintiff refused to provide his license and registration to Officer Willis and requested that Officer Willis call his supervisor. (*Id.* ¶¶ 46-47.) Upon the arrival of a second officer, who is not named as a Defendant, Plaintiff provided his identification. (*Id.* ¶¶ 48, 50.) Both officers retreated to the patrol car, then returned to Plaintiff's car, where Officer Willis handed Plaintiff two summonses and told him to have a good evening. (*Id.* ¶ 51.)

The two summonses Officer Willis issued Plaintiff were (1) improper plates in violation of

---

[4] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

N.J. Stat. Ann. § 39:3-33, and (2) failure to stop at a stop sign in violation of N.J. Stat. Ann. § 39:4-144 (the "Traffic Violations"). (*Id.* ¶ 51.) The summons for failure to stop at a stop sign listed Kingsley Avenue and Swain Street as the intersection. (*Id.* ¶ 55.) Plaintiff alleges that there is no stop sign at that intersection in the direction in which Plaintiff was traveling.[5] (*Id.*)

Plaintiff took pictures of his license plates and the intersection where he was stopped. (*Id.* ¶¶ 59-60.) On the same day as the Traffic Stop, December 28, 2019, Plaintiff gave notice to appeal both alleged violations. (*Id.*) The next day, December 29, 2019, Plaintiff filed a complaint with WOPD's Internal Affairs Department regarding the Traffic Stop. (*Id*. ¶ 60.) In response to his notice to appeal both alleged violations, Plaintiff received a trial date of January 28, 2020. (*Id.* ¶ 59.)

### ii.    The January 28, 2020 Hearing

Plaintiff attended a hearing on the summonses on January 28, 2020 (the "January Hearing"). (*Id.* ¶ 62.) The Assistant Municipal Prosecutor, Defendant Wenzel ("Wenzel"), offered Plaintiff (and others present at the hearing) a plea deal for a $200-$300 fine to avoid points on Plaintiff's license. (*Id.* ¶¶ 63-64.) Plaintiff advised Wenzel that he was not interested in taking the plea deal because he was "innocent" and was appearing "to fight his ticket[.]" (*Id.* ¶¶ 65-66.) Plaintiff showed Wenzel the evidence he collected, including photos of the intersection, his license plates, and his vehicle registration, and informed Wenzel he was innocent and wanted a trial. (*Id.* ¶¶ 62, 67, 70, 72.) Wenzel informed Plaintiff that he would need to take Plaintiff's information and consult with the judge. (*Id.* ¶ 73.) Following Wenzel's meeting with Judge Dowd, Judge Dowd called Plaintiff's case. (*Id.* ¶ 86.) Plaintiff pleaded not guilty and asked that the tickets be dismissed.

---

[5] Plaintiff also maintains that he did not run a stop sign or violate any other traffic violations. (FAC ¶ 58.) He also alleges that his vehicle was legally compliant with Connecticut DMV guidelines. (FAC ¶ 71.)

(*Id.*) Judge Dowd adjourned the trial for February 11, 2020 so that Officer Willis could testify. (*Id.* ¶¶ 87-88.)

### iii.    February 11, 2020 Trial

Plaintiff attended trial on the summonses on February 11, 2020 before Judge Dowd (the "February Trial"). (*Id.* ¶ 89.) Judge Dowd instructed Plaintiff to allow Wenzel to present his case, after which Plaintiff would be allowed to testify or cross examine any witnesses. (*Id.* ¶ 90.) At trial, Officer Willis presented testimony that the alleged violation for failure to stop at the stop sign was committed on Kingsley Avenue and Riggs Place.[6] (*Id.* ¶¶ 91, 93.) He did not testify as to a violation at the intersection listed on the summons (Kingsley and Swain Street) or the improper license plates. (*Id.* ¶ 97.) No amendments of complaints were filed or served on Plaintiff despite Officer Willis' testimony as to the correct location of the alleged violation. (*Id.* ¶ 93.)

Plaintiff alleges that throughout the February 11, 2020 trial Judge Dowd was "biased, partial, and serving as Officer Willis' personal attorney." (*Id.* ¶¶ 104-06, 108-09, 115; *see also id.* ¶¶ 98, 100-04, 110-12.) At the conclusion of the trial, Judge Dowd ruled that Plaintiff was guilty of running a stop sign at the corner of Kingsley Avenue and Swaine Place. (*Id.* ¶ 114.)[7]

On or about February 20, 2020, Plaintiff timely filed an appeal with the Municipal Court of Appeals. (*Id.* ¶ 117.)

### iv.    May 2020 Appeal

On or about May 6, 2020, Plaintiff submitted his appeal brief, arguing that Judge Dowd erred in rendering his decision. (*Id.* ¶ 119.) On or about May 21, 2020, oral argument was held via

---

[6] Wenzel dismissed the second summons for improper display of license plates at this trial. (*See* FAC, Ex. I.)
[7] Plaintiff also alleges he informed Judge Dowd that he could not have proven his innocence without the patrol car's dashcam video; Judge Dowd told Plaintiff he should have requested it. (FAC ¶ 115.) Plaintiff alleges he did request it from the Civil Complaint Review Board and Wenzel, but neither provided Plaintiff the video footage. (*Id.*) However, Plaintiff's Declaration in Support of the Opposition to the Motions to Dismiss further states that Plaintiff requested the video footage from Wenzel after the February Trial. (FAC, Ex. C ¶ 40.)

Zoom before Judge Batista. (*Id.* ¶ 123.) Prosecutor Stephen Pogany,[8] representing the state of New Jersey, did not submit an opposition brief. (*Id.* ¶¶ 120-22.) On or about May 29, 2020, Judge Batista entered a judgment upholding Judge Dowd's decision that Plaintiff was guilty of the alleged violation for failure to stop at a stop sign pursuant to N.J. Stat. Ann. § 39:4-144. (*Id.* ¶ 127.)

On or about July 10, 2020, Plaintiff appealed Judge Batista's decision to the Appellate Division. (*Id.* ¶¶ 140-41.) Plaintiff presented oral argument to the court on or about October 19, 2021. (*Id.* ¶ 143.) On or about November 29, 2021, the Appellate Division reversed the decision and remanded the case to the municipal court for further proceedings. (*Id.* ¶ 144; *id.* Ex. I); *see also State v. Galloway*, No. A-0273-20, 2021 WL 5549508, at *4 (N.J. Super. Ct. App. Div. Nov. 29, 2021). The Appellate Division held that it was undisputed there was an error with the summons, since it incorrectly listed the location of the violation as Kingsley Avenue and Swaine Place rather than Kingsley Avenue and Riggs. (*See id.*); *Galloway*, 2021 WL 5549508 at *3. Relying on N.J. Stat. Ann. R. 7:14-2, the Appellate Division held that the municipal court should have adjourned the case because Plaintiff was not put on notice of the charges against him. *Galloway*, 2021 WL 5549508, at *4.

From November 29, 2021, when the Appellate Division issued its order reversing and remanding the case to the municipal court, to the start of December 2022, there was no action in the matter. (FAC ¶ 145.) In December 2022, Plaintiff contacted the municipal court for a letter of disposition. (*Id.*) Plaintiff was informed that the case had been reopened and was set for a trial on December 13, 2022. (*Id.*) At the hearing, which took place in-person, Plaintiff was told that Pogany was no longer pursuing the summons, and the matter was closed. (*Id.* ¶ 147.) On or about December 19, 2022, Plaintiff, through his attorney, served a sworn Notice of Claim on Defendants

---

[8] Mr. Pogany is not a Defendant in this action.

pursuant to N.J. Stat. Ann. § 59:8-1 to § 59:8-11 (the "Notice of Claim"). (*Id.* ¶ 13.)

### B. Procedural Background

Plaintiff commenced this litigation on July 12, 2023.  (ECF 1.)  On April 17, 2024, this Court granted Defendants' motion to dismiss the initial Complaint and provided Plaintiff 30 days within which to file an Amended Complaint. (ECF 38; ECF 39.) On May 16, 2024, Plaintiff filed the First Amended Complaint. (ECF 40.) On July 23, 2024, the Township Defendants moved to dismiss the claims against them. (ECF 48.)  On July 25, 2024, Judge Batista moved to dismiss. (ECF 49.)

Plaintiff asserts twenty-three separate causes of action in the FAC. As against all Defendants, Plaintiff sets forth the following claims: violations of the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983")[9]; (b) violations of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2 ("NJCRA") and the New Jersey Constitution[10]; (c) common-law claims of malicious prosecution[11] (Count 9), negligence (Count 10), negligent infliction of emotional distress (Count 12), intentional infliction of emotional distress (Count 13), and defamation (Count 15); and (d) declaratory relief (Count 23).  Plaintiff also brings claims against Officer Willis, Wenzel, Judge Dowd and Judge Batista for (a) "Casting Plaintiff in a False Light" in violation of the New Jersey Constitution (Count 3); and (b) misconduct in office in violation of the New Jersey Constitution and N.J. Stat. Ann. § 2C:30-2 and N.J. Stat. Ann. § 40A:14-147 (Count 4).  Next, as to West

---

[9] Race discrimination in violation of the U.S. Constitution (Count 2), malicious prosecution (Count 9), deprivation of due process in violation of the U.S. Constitution (Count 14), violation of the Takings Clause of the Fifth Amendment (Count 17), and violation of the Sixth Amendment right to a speedy trial (Count 22).

[10] Race discrimination and deprivation of civil rights in violation of the NJCRA (Count 1), violation of the right to the enjoyment of liberty and property under the New Jersey Constitution (Count 5), infliction of cruel and unusual punishment in violation of the New Jersey Constitution (Count 7), and violation of rights retained by people under the New Jersey Constitution (Count 8). Plaintiff did not assert these claims pursuant to the NJCRA, but the Court construes the New Jersey Constitution claims as brought under the NJCRA. *Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014) (The NJCRA "is a means of vindicating substantive rights and is not a source of rights itself.").

[11] The FAC is unclear as to whether the claim for malicious prosecution (Count 9) is brought pursuant to Section 1983 or New Jersey common law.

Orange, WOPD, and Officer Willis, Plaintiff brings claims for the violation of the right to be secure in one's person and property pursuant to the New Jersey Constitution (Count 6) and violation of the Equal Protection Clause of the U.S. Constitution (Count 21). Plaintiff further brings claims for negligent training and supervision against West Orange and WOPD (Count 11) and "Presentation of False Information" against West Orange, WOPD, Officer Willis, Judge Dowd, and Wenzel (Count 16). Plaintiff also brings a claim for failure to disclose exculpatory evidence in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution against West Orange, WOPD, Officer Willis, and Wenzel (Count 20). Lastly, Plaintiff brings claims for retaliation in violation of the First Amendment (Count 18) and violation of the double jeopardy clause of the Fifth Amendment (Count 19) against West Orange, Wenzel, Judge Dowd, and Judge Batista.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III.    ANALYSIS

### A.  Claims Against West Orange Police Department

Plaintiff's claims against the WOPD cannot be sustained under law. A municipal police department is not a separate entity from the municipality. *Castro v New Jersey*, 521 F. Supp. 3d 509, 515 n.4 (D.N.J. 2021) ("municipal police departments or departments of public safety are not separate entities from the municipalities"); *see also Buffaloe v. City of Plainfield*, No. 12-03295, 2013 WL 2182327, at *2 (D.N.J. May 20, 2013) (same).  Because the WOPD is not a separate entity from West Orange, Plaintiff's claims against WOPD are **DISMISSED with prejudice.**

### B.  Judicial Immunity

Judge Dowd and Judge Batista both argue that all claims against them should be dismissed pursuant to the doctrine of judicial immunity. (Township Br. at 14-15; Batista Br. at 10-15.)  The Court agrees.

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). The immunity

8

attaches to judicial acts even in the face of "allegations of malice or corruption of motive." *Gromek v. Maenza*, 614 F. App'x 42, 45 (3d Cir. 2015) (citation omitted).

The Supreme Court has, however, identified two exceptions to this rule. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. To determine whether an act is judicial, courts look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). With respect to the second inquiry, courts must distinguish between acts in the "clear absence of jurisdiction," which do not enjoy the protection of absolute immunity, and acts that are merely "in excess" of jurisdiction, which do enjoy that protection. *Stump*, 435 U.S. at 356 n.7.

### 1.  Judge Dowd

Plaintiff argues that both exceptions apply to Judge Dowd, but the alleged facts in the FAC do not support Plaintiff's assertions. First, Judge Dowd's alleged actions throughout the proceedings were functions "normally performed by a judge." *Stump*, 435 U.S. at 362. (*See e.g.*, FAC ¶¶ 87-88 (alleging Judge Dowd adjourned the January Hearing); *id.* ¶ 90 (alleging Judge Dowd presided over the February Trial); *id.* ¶ 114 (alleging Judge Dowd rendered a decision following the February Trial)).

Plaintiff's further allegations that Judge Dowd was biased, impartial, and conspired against him are insufficient to remove immunity.[12] *See e.g.*, *Cleavinger v. Saxner*, 474 U.S. 193, 200

---

[12] Among other allegations, Plaintiff contends that Judge Dowd prevented Plaintiff from asking Officer Willis relevant questions (FAC ¶¶ 100-04, 111); did not let Plaintiff submit his photographs into evidence (*id.* ¶ 116); maintained a conspiracy with Officer Willis to make Plaintiff "guilty of something on record" (*id.* ¶ 105; *see also id.* ¶¶ 110, 112); acted as Officer Willis' "personal attorney" throughout the hearing (*id.* ¶¶ 106, 108-09, 115); and used

(1985) (immunity attaches to judicial acts even where a judge allegedly acted with improper motives); *Gallas v. Supreme Court*, 211 F.3d 760, 769 (3d Cir. 2000) (quoting *Stump*, 435 U.S. at 356-57) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority"); *Owens v. Armstrong*, 171 F. Supp. 3d 316, 330 (D.N.J. 2016) (holding that judicial immunity extends to suits where it is alleged that the judge is acting as part of a conspiracy) (citing *Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980)).

The second exception is also inapplicable because Plaintiff does not allege that Judge Dowd lacked jurisdiction over the underlying proceeding. (*See generally* ECF 40, FAC.)  If a judge has jurisdiction over the underlying proceeding, even "inexplicable" or "grave" procedural or legal errors do not defeat immunity. *Figueroa v. Blackburn*, 208 F.3d 435, 445 (3d Cir. 2000) (citations omitted). Because Judge Dowd is entitled to absolute judicial immunity, all claims against Judge Dowd are **DISMISSED without prejudice.**

### 2. Judge Batista

Plaintiff argues that Judge Batista is not entitled to judicial immunity because Judge Batista allegedly acted in a non-judicial capacity because he was biased against Plaintiff and took actions to advance the interests of Officer Willis, Wenzel, and the Township. (Opp. to Batista MTD ¶¶ 28, 30, 33, 38.)[13] Plaintiff's conclusory allegations are not supported by alleged facts in the FAC.  *See Kim v. Ali*, No. 24-1448, 2024 WL 5135645, at *2 (3d Cir. Dec. 17, 2024) (vague allegations that judge engaged in a "broad pattern of Judicial Misconduct" do not plausibly suggest that the judge acted outside his judicial role or in the absence of jurisdiction). Plaintiff also argues that Judge

---

the trial to "ambush" Plaintiff in order to "undermine his credibility" as to the fact that Officer Willis profiled him (*id.* ¶ 112).

[13] Plaintiff alleges without support that, *inter alia*, Judge Batista "circumvent[ed] due process and ignore[ed] constitutional protections" (FAC ¶ 150); "intended to save Officer Willis from a charge of discriminatory treatment violating Mr. Galloway's civil rights [by] depriv[ing] [Plaintiff] of his due process constitutional rights" (*id.* ¶ 189); "ma[de] up rules as he [went] along" (*id.* ¶ 211); engaged in "systematic racial profiling and discrimination" against Plaintiff (*id.* ¶ 220); and "sought to deprive Plaintiff of his substantive due process rights." (*Id.* ¶ 268.)

Batista violated the Code of Judicial Conduct ("judicial code"). (Opp. to Batista MTD ¶¶ 27-29, 33, 38-40.)  Even taken as true, Judge Batista's alleged violation of the judicial code does not strip Judge Batista of judicial immunity.  *See, e.g.*, *Clauso v. Solomon*, No. 14-5280, 2017 WL 1528712, at *6 (D.N.J. Apr. 27, 2017) (granting absolute judicial immunity and rejecting plaintiff's argument that judges are not immune when they violate due process or judicial ethics), *aff'd*, 790 F. App'x 427 (3d Cir. 2019).

The allegations in the FAC demonstrate that Judge Batista acted in a judicial capacity throughout his interactions with Plaintiff.  (*See, e.g.*, FAC ¶¶ 121, 123, 127 (allegations that Judge Batista held oral argument, solicited case law from Pogany, and entered an order upholding the lower court's decision).) Even though Judge Batista's May 29, 2020 decision was overturned (*see* FAC ¶ 144, *id.* Ex. I), Judge Batista retains judicial immunity. *See Wilson v. United States*, No. 21-10004, 2022 WL 180326, at *4 (D.N.J. Jan. 20, 2022) (quoting *Forrester v. White*, 484 U.S. 219, 226-27 (1988)) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.").

For these reasons, all of Plaintiff's claims against Judge Batista are **DISMISSED without prejudice.**

### C.  Prosecutorial Immunity

Defendant prosecutor Wenzel argues that Plaintiff's claims against Wenzel are barred under the doctrine of prosecutorial immunity.[14] (Township Br. at 16-18.) Plaintiff responds that Wenzel's

---

[14] The FAC is unclear as to whether certain causes of action are asserted against Wenzel in his official capacity, individual capacity, or both.  *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) (distinguishing Section 1983 official-capacity suits from personal-capacity suits). Although Plaintiff specifies that the Fifth, Ninth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Twentieth causes of action are made against Wenzel in his official capacity, Plaintiff does not specify whether his other causes of action arising under Section 1983 and the NJCRA are brought against Wenzel in Wenzel's official or individual capacity. (*See* First Cause of Action, Second Cause of Action, Third Cause of Action, Fourth Cause of Action, Seventh Cause of Action, Eighth Cause of Action, Seventeenth Cause of

conduct was administrative and investigatory and therefore Wenzel is not entitled to absolute immunity.  (Opp. to Township MTD ¶¶ 35-37.)

### 1. Section 1983 and NJCRA Claims Against Wenzel in His Individual Capacity

Absolute prosecutorial immunity applies to the Section 1983 and NJCRA claims[15] brought against Wenzel in his individual rather than official capacity. Prosecutorial immunity applies to § 1983 claims when the "prosecutor's conduct is 'intimately associated with the judicial phase of the criminal process.'" *Newsome v. City of Newark*, No. 13-06234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  A defendant prosecutor must establish that "he or she was functioning as the state's advocate when performing the action(s) in question," such that the actions were "in a judicial or 'quasi-judicial' capacity." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008).   Prosecutorial immunity, however, "does not apply where the prosecutor's actions serve a purely investigative function."  *Newsome*, 2014 WL4798783, at *2.  Plaintiff contends that Wenzel's actions during the January Hearing and February Trial were investigative and therefore Wenzel is not protected by prosecutorial immunity. (Opp. to Township MTD ¶¶ 35-36.)

The allegations as pleaded support a conclusion that Wenzel acted in a judicial rather than investigative or administrative capacity.  As alleged in the FAC, Wenzel (a) asked Plaintiff "investigative questions" about the evidence Plaintiff provided; (b) disregarded evidence; (c)

---

Action, Eighteenth Cause of Action, Nineteenth Cause of Action, and Twenty-second Cause of Action).  Wenzel did not address this distinction in his motion to dismiss.  (*See* Township Br. at 16-18.)  However, because Wenzel moves to dismiss all claims against him on the basis of prosecutorial immunity (*see id.*), the Court addresses prosecutorial immunity under both theories.

[15] The Court assesses the Section 1983 claims and NJCRA claims together.  *See Williams v. Vanderud*, No. 16-1245, 2017 WL 4274265, at *11 (D.N.J. Sept. 26, 2017) (citing *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011)) ("The NJCRA is [] generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses and immunities as those brought under § 1983.").

should have dismissed the summonses earlier; and (d) withheld exculpatory evidence (*e.g.*, FAC ¶¶ 70, 72, 74, 77-78, 80, 84, 116, 318), actions which are squarely within Wenzel's prosecutorial function. *See Ianuale v. New Jersey*, No. 18-03069, 2024 WL 4856206, at *10 (D.N.J. Nov. 20, 2024) (quoting *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008); *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006)) (noting that the prosecutorial function includes, but is not limited to, acts such as "collecting evidence [and] evaluating the collected evidence" and that "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."); *Newsome*, 2014 WL 4798783, at *3 ("Decisions regarding how to proceed with a prosecution serve a prosecutorial, rather than administrative function and thus warrant absolute immunity."); *Hoffman v. Warren Cnty. Prosecutor's Off.*, No. 23-00561, 2023 WL 8271806, at *6 (D.N.J. Nov. 30, 2023) (prosecutor's pursuit of charges despite insufficient evidence is an act protected by absolute immunity).

Although Plaintiff is correct that "some acts fall wholly outside the prosecutorial role no matter when or where they are committed," this exception is inapplicable here. (Opp. to Township MTD ¶ 34 (quoting *Odd*, 538 F.3d at 211).) Plaintiff's bald assertions of Wenzel's misconduct[16] fail to meet the pleading standard of *Iqbal* and *Twombly.*

### 2. Section 1983 and NJCRA Claims Against Wenzel in His Official Capacity

Plaintiff's NJCRA and Section 1983 claims brought against Wenzel in his official capacity are also dismissed because he is not a "person" amenable to suit under those statutes. "For a

---

[16] Plaintiff alleges in a conclusory fashion that Wenzel "conspired with the Judge regarding the Plaintiff's case" (FAC ¶ 85), "circumvent[ed] due process, ignore[d] constitutional protections, and [did] not uphold[] the Oath of Office" (*id.* ¶ 150), and "conceal[ed] Officer Willis' racial profiling and invidious race discrimination[.]" (*Id.* ¶ 151.)

defendant to be liable under either § 1983 or the New Jersey Civil Rights Act, they must be a 'person'" as defined under those statutes.[17] *Hoffman*, 2023 WL 8271806, at *5 (citing 42 U.S.C. § 1983; N.J. Stat. Ann. § 10:6-2). "'[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.'" *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 854 (3d Cir. 2014) (quoting *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). "'The same is true under [the NJCRA], which mirrors the language of § 1983.'" *Hoffman*, 2023 WL 8271806, at *5 (quoting *Gonzalez v. New Jersey Dep't of Child. & Fams.*, 545 F. Supp. 3d 178, 202 (D.N.J. 2021)). "Local governmental bodies and their officials, by contrast, are regarded as 'persons' amenable to suit under § 1983." *Lagano*, 769 F.3d at 854 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)).

The Court determines that Wenzel was acting as an arm of the state when he engaged in the alleged misconduct at issue. "When a county prosecutor's office and county prosecutors 'engage in classic law enforcement and investigative functions, they act as officers of the State' and are not amenable to suit." *Ianuale*, 2024 WL 4856206, at *8 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)). "[C]ounty prosecutors who perform administrative functions 'unrelated to the duties involved in criminal prosecution' are acting on behalf of the county and are subject to suit." *Ianuale*, 2024 WL 4856206, *9 (quoting *Lagano*, 769 F.3d at 855) (citing *Coleman*, 87 F.3d at 1499).

For the reasons stated above (*see supra* Section III.C(1)), Wenzel engaged in "classic law enforcement and investigative functions" rather than non-judicial "investigatory and

---

[17] Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The question of whether a public official is a "person" in the context of Section 1983 is analytically distinct from the concept of Eleventh Amendment sovereign immunity. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 857 (3d Cir. 2014) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)).

administrative actions." Accordingly, Wenzel is not a "person" amenable to suit under either § 1983 or the NJCRA.[18]  Prosecutorial immunity thus applies to Wenzel for claims against him in his official capacity. *See Hoffman*, 2023 WL 8271806, at *5 (D.N.J. Nov. 30, 2023) (holding that county prosecutor was not a "person" amenable to suit under Section 1983 and NJCRA); *see also Sexton v. New Jersey Dep't of Corr.*, No. 21-20404, 2024 WL 4615763, at *10 (D.N.J. Oct. 30, 2024) (same).

Because Wenzel is entitled to prosecutorial immunity as to all Section 1983 and NJCRA claims in both his personal capacity and because he is not a "person" subject to suit under Section 1983 and the NJCRA, the Court declines to further address the merits of those claims against him. Plaintiff's claims against Wenzel pursuant to Section 1983 and NJCRJA (Counts 1, 2, 3, 4, 5, 7, 8, 14, 17, 18, 19, 20, and 22) are **DISMISSED without prejudice.**

### 3.  Common Law Claims Against Wenzel[19]

Under New Jersey law, "prosecutorial immunity is not absolute like its federal counterpart." *Newsome*, 2014 WL 4798783, at *4. The New Jersey Tort Claims Act ("NJTCA") includes a prosecutorial immunity provision, which provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J. Stat. Ann. § 59:3-8.  However, under New Jersey law, a prosecutor does not enjoy prosecutorial immunity "if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice, or willful misconduct." *Newsome*, 2014 WL 4798783, at *5 (quoting N.J. Stat. Ann. § 59:3-14(a)).

---

[18] Although neither party discusses the specific issue of whether Wenzel is a "person" under Section 1983, Wenzel moved to dismiss all claims against him, including those asserted against Wenzel in his official capacity, on the basis of prosecutorial immunity. (*See* Township Br. at 16-18.) In the interest of judicial economy and completeness, the Court will analyze this argument. *Griffin v. Twp. of Clark*, No. 09-4853, 2010 WL 339031, at *4 (D.N.J. Jan. 22, 2010).

[19] Although Wenzel did not specifically address this point in his MTD, the Court addresses it. *See supra* n.18.

In support of his state law claims against Wenzel (Counts 9, 10, 12, 13 and 15), Plaintiff alleges that Wenzel's actions were "intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to the rights Plaintiff is entitled to[.]" (FAC ¶¶ 233, 242, 254, 262, 275, 282). The FAC also includes allegations that Wenzel acted with invidious motives in prosecuting Plaintiff for the Traffic Violations. (*See supra* Section III.C(1).) However, "without more factual allegations, the purported improper motives . . . are speculative and conclusory." *Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 115 (D.N.J. 2020) (conclusory allegations that "Plaintiff's race and a cover-up operation" motivated defendant prosecutor's conduct were insufficient to overcome prosecutorial immunity under New Jersey Law). *See also Castro v. Atl. Cnty.*, No. 15-02041, 2018 WL 3122065, at *9 (D.N.J. June 25, 2018) (quotation omitted) (explaining that "bare allegations of malice . . . should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery."). And Wenzel's decision to prosecute Plaintiff is alone "insufficient to overcome immunity under New Jersey law." *Saint-Jean*, 509 F. Supp. 3d at 115 (citing *Van Engelen v. O'Leary*, 732 A.2d 540, 548 (N.J. Super. Ct. App. Div. 1999)).

Moreover, there are no allegations in the FAC (and Plaintiff does not argue) that Wenzel acted outside the scope of his employment. *See Kelly v. Cnty. of Monmouth*, 883 A.2d 411, 418 (N.J. Super. Ct. App. Div. 2005) (An employee acts outside the scope of his employment "when he engages in tortious conduct that is not reasonably connected with his employment.").

Consequently, Plaintiff's common-law claims against Wenzel (Counts 9, 10, 12, 13 and 15) are **DISMISSED without prejudice.**

### D.  1983 and NJCRA Claims Against the Remaining Defendants

Defendants assert that all claims except the malicious prosecution claim (Count 9) must be

dismissed as untimely under each applicable statute of limitations. (Township Br. at 9-13; Batista Br. at 8-10.) Plaintiff counters that Defendants' actions are part of a "continuous violation of his rights" under Section 1983 and the NJCRA and therefore the continuing violation doctrine applies. (Opp. to Township MTD ¶¶ 12-13, 16-18; Opp. to Batista MTD ¶¶ 12-20.) He further contends that equitable tolling extends the statute of limitations.

The statute of limitations is an affirmative defense not normally decided on a motion to dismiss. *See Crump v. Passaic Cnty.*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id*. (citation omitted).

"Section 1983 has no statute of limitations of its own but borrows the statute of limitations from state personal injury torts." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (citation omitted). In New Jersey, personal injury torts have a two-year statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Thus, the applicable statute of limitations for Plaintiff's Section 1983 claims is two years. *Id.* The same is true for Plaintiff's NJCRA claims. *See Bullock v. Borough of Roselle*, No. 17-13208, 2018 WL 4179481, at *9 (D.N.J. Aug. 31, 2018) ("Like other federal and state courts before me, I conclude that NJCRA, like § 1983, is subject to the State's general two-year personal injury statute of limitations.") (citations omitted).

Federal law controls when a Section 1983 claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."); *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022) ("We assess this claim-accrual issue by looking to federal law."). Under federal law, "a § 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of her injury." *Coello*, 43 F.4th

at 352.  Because Plaintiff's first Complaint was filed on July 12, 2023 (ECF 1), Plaintiff must assert claims that accrued on or after July 12, 2021 to fall within the two-year statute of limitations for Section 1983 and NJCRA claims.

### 1.  Continuing Violations Doctrine

Plaintiff acknowledges that his Section 1983 and NJCRA claims fall outside the statute of limitations but contends that the continuing violation doctrine applies.  (Opp. to Township MTD at ¶ 12-13.) The continuing violation doctrine is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).  The rule provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).

"The doctrine's focus 'is on affirmative acts of the defendants.'" *Tearpock-Martini*, 756 F.3d at 236 (quoting *Cowell,* 263 F.3d at 293).  Continual "ill effects" from an original violation cannot serve as the basis of a continuing violation. *Cowell,* 263 F.3d at 293.  Isolated or sporadic acts are also insufficient to constitute a continuing practice. *See Chitester v. Stacy L.*, No. 17-12650, 2023 WL 3167646, at *5 (D.N.J. Apr. 28, 2023), *appeal dismissed*, No. 23-1957, 2024 WL 2801097 (3d Cir. Feb. 13, 2024)). "Courts consider two factors[20] in determining whether to apply the continuing violations doctrine: (1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett v. Susquehanna Cnty. Child. & Youth Servs.*, 592 F. App'x 81, 84 (3d Cir. 2014) (citing *Cowell*, 263 F.3d at 292).

---

[20] Plaintiff discusses a third "permanency requirement" in his Opposition (Opp. to Township MTD at ¶ 18), but this factor is no longer required. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013).

The Court agrees with the Defendants that the continuing violation doctrine does not apply to the Section 1983 and NJCRA claims against them. (*See* Township Reply at 6-10.) Plaintiff argues that the continuing violation doctrine applies because "the date of the last discriminatory instance occurred was December 13, 2022, when Plaintiff was forced to appear in person,[21] while other cases were allowed to proceed via Zoom." (Opp. to Township MTD ¶ 16.)

Plaintiff's argument fails for two reasons. First, the acts alleged were not recurring such that the continuing violation doctrine is applicable. *See Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 389 (D.N.J. 2011) (stating that continuing violation doctrine does not apply to a racial profiling claim involving many discrete acts of racial profiling and selective enforcement in Section 1983 action.) The December 13, 2022 hearing took place almost three years after the Traffic Stop and over two years after Judge Batista's decision affirming Judge Dowd's ruling that Plaintiff was guilty of the traffic violation. (*See* FAC ¶ 127.) Plaintiff himself admits that the Defendants took no actions whatsoever from November 2021 to the start of December 2022. (*See id.* ¶ 145.)

Second, the continuing violation doctrine "'does not apply when plaintiffs are aware of the injury at the time it occurred.'" *Bennett*, 592 F. App'x at 85 (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003)). Plaintiff admits on the face of the FAC that he was aware of his purported injuries at the time they occurred, outside of the limitations period. Specifically, Plaintiff alleges that on December 29, 2019, the day after the Traffic Stop, he filed a complaint with WOPD's Internal Affairs Department about the Traffic Stop. (FAC ¶¶ 21, 60.) Plaintiff also admits in his opposition that he "was aware of the discriminatory acts but faced continuous barriers in asserting his rights due to the Defendants'

---

[21] At this hearing, Plaintiff was informed that the prosecutor was no longer pursing the summons. (FAC ¶ 147.) In other words, Plaintiff learned his case was dismissed.

ongoing misconduct." (Opp. to Township MTD ¶ 18.)  He further admits that "*[e]ach act*, from the traffic stop to the court proceedings, had significant and lasting impacts on the Plaintiff's life, including financial losses, emotional distress, and reputational damage." (*Id.* (emphasis added).)

Thus, by the time Plaintiff was asked to appear in court in-person rather than on Zoom, he had possessed facts relevant to his Section 1983 and NJCRA claims for at least two years.[22]  *See Cowell*, 263 F.3d at 295; *see also Williams v. Borough of Highland Park*, No. 15-6879, 2016 WL 3566729, at *8 (D.N.J. June 29, 2016), *subsequently aff'd*, 707 F. App'x 72 (3d Cir. 2017) (determining that Section 1983 claims accrued when plaintiffs knew or had reason to know of their injury stemming from a borough ordinance, not later when they became aware of the "ultimate effects" of the ordinance).

## 2.  Equitable Tolling

Plaintiff also contends that the equitable tolling doctrine applies, and his claims are not time-barred. (*See* Opp. to Township MTD ¶¶ 20, 22, 24, 25.)

Under New Jersey law, equitable tolling applies where the plaintiff exercises diligence and if one of three circumstances are present: "(1) if the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his or her rights, or (3) if the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Fisher v. Hollingsworth*, 115 F.4th 197, 212 (3d Cir. 2024) (finding that equitable tolling did not apply in part because Plaintiff was not diligent in determining when to file suit).[23]

---

[22] Although Plaintiff labels his in-person appearance in court on December 13, 2022 as a "discriminatory instance" in his opposition to the Township Defendants' motion to dismiss (Opp. to Township MTD at ¶ 16), in the FAC, Plaintiff characterizes his efforts to attend his hearings as an ill effect of prior alleged claims. (*See* FAC ¶¶ 148, 151.)  Even if Plaintiff does maintain a standalone Section 1983 or NJCRA claim based on his allegation that he had to attend the December 13, 2022 hearing in-person rather than by Zoom, the FAC does not include well-pleaded allegations sufficient to support that claim. *See Iqbal*, 556 U.S. at 678.

[23] Generally, state tolling principles also govern Section 1983 claims. *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009) (citations omitted). Federal tolling principles apply in limited circumstances where the state tolling principles contradict federal law or policy. *Id.*

Plaintiff provides no allegations to support a finding that he had been pursuing his rights diligently, that some extraordinary circumstances prevented him from filing these claims earlier, or that the Defendants actively misled Plaintiff.  Although Plaintiff states that equitable tolling should apply because Defendants took "deliberate actions to conceal their wrongdoing and delay the Plaintiff's awareness of the full scope of his injury," (Opp. to Township MTD ¶ 20) Plaintiff's allegations do not offer support for this argument.  For example, Plaintiff provides no explanation as to why he waited to file suit until nearly four years after the Traffic Stop (*see* FAC ¶ 39) and over two years after receiving an unfavorable decision from Judge Batista regarding his challenge to the Traffic Violation. (*See id.* ¶ 127.)

 Plaintiff's reference to *Wallace v. Kato*, 549 U.S. 384 (2007) is unavailing.  (*See* Opp. to Township MTD ¶ 24.) That case concerns the running of the statute of limitations concerning false arrest and false imprisonment. *See Wallace*, 549 U.S. at 388. As the Court stated, those causes of action are subject to a "distinctive" rule when determining the beginning of the limitations period. *Id.* at 389. No such claim exists here.

For the above-stated reasons, the Court declines to apply equitable tolling to Plaintiff's claims. Plaintiff's Section 1983 and NJCRA claims against the remaining Defendants Officer Willis and West Orange are **DISMISSED without prejudice.**

### E.  Tort Claims

Plaintiff asserts the following common law claims against Officer Willis and West Orange[24]: defamation, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and malicious prosecution. He also asserts a claim for negligent training and

---

[24] West Orange is not liable for torts arising from Judge Dowd, Judge Batista, or Wenzel's conduct since the Court found that those Defendants were immune from suit. *See* N.J. Stat. Ann. § 59:2–2(b) (public entity is not liable for an act or omission of a public employee where the public employee is not liable).

supervision against the Township. (FAC ¶¶ 243-47.)   These claims are governed by the NJTCA, N.J. Stat. Ann. § 59:1-1 *et seq.  See Ingram v. Township of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) (citing, *inter alia*, *Velez v. City of Jersey City*, 850 A.2d 1238 (N.J. 2004); *Longo v. Santoro*, 480 A.2d 934 (N.J. Super. Ct. App. Div. 1984)).

Defendants maintain that Plaintiff's tort claims, other than malicious prosecution, must be dismissed due to Plaintiff's failure to file timely notice of his claims.[25]  (Township Br. at 19-20.) Plaintiff counters that he did timely serve a notice as required by the NJTCA, and therefore, his common-law claims are not time-barred.  (FAC ¶¶ 13, 19; *Id.* Ex. A (Notice of Claim)).

A party that asserts a tort claim seeking damages from a public entity or public employee must comply with the NJTCA, which "establishes the procedures by which [such] claims may be brought."  *D.D. v. Univ. of Med. & Dentistry of N.J.*, 61 A.3d 906, 915 (N.J. 2013) (quoting *Beauchamp v. Amedio*, 751 A.2d 1047, 1049 (N.J. 2000)). The NJTCA requires a plaintiff to file a notice of claim providing, among other things, "the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." N.J. Stat. Ann. § 59:8-4.  Within ninety days of the claim's accrual, a claimant must file this notice with the entity involved in the wrongful act or the New Jersey Attorney General.  N.J. Stat. Ann. §§ 59:8-7, 59:8-8.

If an individual fails to file within ninety days, "[t]he claimant shall be forever barred from recovering against a public entity or public employee . . . except as otherwise provided in [N.J. Stat. Ann. § 59:8-9]."  N.J. Stat. Ann. § 59:8-8.  N.J. Stat. Ann. § 59:8-9, in turn, provides that a

---

[25] The Township Defendants also assert that they are immune from liability under the qualified immunity doctrine. (Township Br. at 21-27.)  Since the Court dismisses the tort claims on different grounds, *see infra* Section III.F, it declines to reach this argument.

judge may allow a claimant to file a late notice of claim within one year of a claim's accrual if doing so would not cause substantial prejudice to the defendant and if the untimeliness was due to "extraordinary circumstances." N.J. Stat. Ann. § 59:8-9. The timing requirements are strictly construed, and a plaintiff who fails to comply is barred from recovering on his claims. *Niblack v. SCO Malbreen*, No. 15-5298, 2016 WL 1628881, at *3 (D.N.J. Apr. 25, 2016). In fact, "[f]ailure to file a notice of claim is a ground for dismissal at the motion to dismiss stage." *Id.* (citing *William v. Westampton Police Dep't*, No. L-1144-13, 2014 WL 5393184, at *3 (N.J. Super. Ct. App. Div. Oct. 24, 2014)).

### 1. Plaintiff's Notice of Claim[26]

Plaintiff alleges 23 different claims against six defendants arising from multiple different occurrences.[27] (*See generally* FAC.) The operative question for assessing the timeliness of Plaintiff's Notice of Claim is when Plaintiff's claims accrued as to each Defendant.

Plaintiff's tort claims against Defendants arise from (1) the December 28, 2019 traffic stop (FAC ¶ 39); the January 28, 2020 hearing (*id.* ¶ 62); the February 11, 2020 trial (*id.* ¶ 114); the May 21, 2020 hearing (*id.* ¶ 123), and Judge Batista's May 29, 2020 decision. (*Id.* ¶ 127.) Pursuant to the NJTCA, Plaintiff was required to file a Notice of Claim 90 days after any claims arising from each of these occurrences accrued. *See Love v. Edison Township*, No. 22-3275, 2023 WL 3597674, at *8 (D.N.J. May 23, 2023) (assessing the due date of claims' notices as different depending on the defendant and occurrence); *see also Alberts v. Gaeckler*, 144 A.3d 80, 83 (N.J.

---

[26] Because the Court has dismissed the common-law claims against Defendants Judge Dowd, Judge Batista, and Wenzel on the basis of judicial and prosecutorial immunity respectively, the Court will address the sufficiency of Plaintiff's Notice of Claim only as to the remaining Defendants, Officer Willis and West Orange.

[27] As explained herein, the continuing violation and equitable tolling doctrines do not apply to Plaintiff's claims. (*See supra* Section III.D(1)-(2).)

Super. Ct. Law. Div. 2014) (holding that husband's bystander liability claim for NIED arising out of wife's bike accident required separate tort claim notice).

### i. Defamation Claim

In New Jersey, defamation claims "shall be commenced within 1 year next after the publication of the alleged libel or slander." N.J. Stat. Ann. § 2A:14-3; *see also O'Donnell v. Simon*, 362 F. App'x 300, 305 (3d Cir. 2010) (affirming district court's Rule 12(b)(6) dismissal of defamation claims and stating that "[i]n New Jersey, the 'discovery rule' cannot extend the limitations period for defamation claims") (citing *Lawrence v. Bauer Publ'g & Printing Ltd.*, 396 A.2d 569, 570 (N.J. 1979)). Here, the bases for Plaintiff's defamation claim involves statements that occurred—and thus accrued—well over 90 days before Plaintiff submitted the Notice of Claim. (*See* FAC ¶ 274.)

### ii. Remaining Tort Claims

Plaintiff's other allegedly untimely tort claims—negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligent supervision—are subject to a two-year statute of limitations. N.J. Stat. Ann. § 2A:14-2. "New Jersey caselaw establishes that the date of accrual of a tort claim is the date on which the negligent action or omission occurred." *Kennedy v. New Jersey Ct. Sys.*, No. 22-05797, 2024 WL 4024232, at *7 (D.N.J. Aug. 30, 2024) (citing *Vazquez v. Rutherford*, No. 07-1350, 2007 WL 2137937 at *4 (D.N.J. Jul. 23, 2007)). "The only exception to this standard occurs when the victim of the tort is either not aware of the injury, or the victim is unaware that a third party is responsible for the injury." *Kennedy*, 2024 WL 4024232, at *7 (citing *Vazquez*, 2007 WL 2137937 at *4). This equitable principal, called the discovery rule, precludes accrual until an "injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, that he may have a basis

for an actionable claim." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quoting *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973)). "[T]he plaintiff need not, however, comprehend the full scope and legal significance of such facts" for a claim to accrue. *Waselik v. Twp. of Sparta*, No. 16-4969, 2017 WL 2213148, at *6–8 (D.N.J. May 18, 2017) (citing *Strauss v. Twp. of Holmdel*, 711 A.2d 1385, 1392 (N.J. Super. Ct. Law Div. 1997)).

Each of Plaintiff's remaining tort claims against Officer Willis and the Township arose from events that occurred well over 90 days before Plaintiff filed his Claim Notice. Regarding any tort claims arising from the Traffic Stop, Plaintiff alleges that he filed a complaint with the WOPD the day after the Traffic Stop.  (FAC ¶ 60.)  As such, Plaintiff admits on the face of the FAC that he was aware of his alleged injuries from the Traffic Stop no later than December 19, 2019.  Given that the discovery rule does not apply where Plaintiff was both (1) aware of his alleged injury and (2) aware that Officer Willis and/or the Township were responsible for his alleged injury, Plaintiff's tort claims against Officer Willis accrued no later than December 19, 2019.

For the same reasons, Plaintiff's claim for negligent training and supervision (Count 11) is limited to injuries arising from Officer Willis' actions the day of the traffic stop. (*See* FAC ¶ 244 (alleging West Orange "failed to exercise reasonable care to supervise their employee since it is evident that Officer Willis was incompetent in performing his duties.").) Therefore, Plaintiff's Notice of Claim was not compliant with the 90-day NJTCA requirement. Plaintiff's claims against Officer Willis and West Orange for negligence, negligent training and supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation (Counts 10, 11, 12, 13, 15) are **DISMISSED without prejudice.**

### F. Malicious Prosecution (Count 9)

#### 1. Officer Willis

The Township Defendants do not argue that Plaintiff's malicious prosecution claim is time-barred but do assert that it should be dismissed for failure to state a claim. (Township Br. at 19-21.) Plaintiff maintains that he has stated a claim. (Opp. to Township MTD at ¶¶ 39-47.)

To state a malicious prosecution claim under Section 1983, the NJCRA, and the common law,[28] a plaintiff must plead that (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)) (setting forth elements for a Section 1983 malicious prosecution claim); *Waselik*, 2017 WL 2213148, at *8 n.15 (stating that a malicious prosecution claim under the NJCRA is construed in parallel to a Section 1983 claim); *Frost v. Cnty. of Monmouth*, No. 17-4395, 2018 WL 1469055, at *9 (D.N.J. Mar. 26, 2018) (setting forth elements of common law malicious prosecution claim). Section 1983 claims also require a plaintiff to establish that "he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler*, 564 F.3d at 186.

---

[28] It is not obvious whether Plaintiff asserts this claim under Section 1983 or New Jersey common law, so the Court assesses both. *See Stolinski*, 772 F. Supp. 2d at 637 ("This Court is not aware of any precedent suggesting the proofs [for malicious prosecution under the common law and New Jersey Constitution] would differ in any way.").

The Court has already determined that Defendants Judge Dowd, Judge Batista, and Wenzel are immune from Plaintiff's claims against them. (*See supra* Sections III.B-C.) Thus, the only defendants remaining as to the malicious prosecution claim are Officer Willis and the Township.

Regardless of whether it is brought pursuant to common law or Section 1983, Plaintiff's malicious prosecution claim against Officer Willis fails because the factual allegations do not suggest that Officer Willis acted with malice during the Traffic Stop. Plaintiff repeatedly alleges that the sole reason Officer Willis pulled him over was racial profiling. (*See* FAC ¶¶ 53, 55-58.) But Plaintiff's allegations that Officer Willis (1) did not immediately inform Plaintiff as to why Officer Willis stopped him; (2) identified the incorrect intersection on the Traffic Violation summonses; and (3) should have known how to write the summons properly as an officer with over six years of experience (FAC ¶¶ 45-46, 53-55) do not "suggest[] or demonstrate[e] malice." *Frost*, 2018 WL 1469055, at *9 (dismissing common law malicious prosecution claim for failure to adequately allege malice); *see also Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) (affirming dismissal of malicious prosecution claim where Plaintiff only provided conclusory allegations that Defendant acted with malice). Plaintiff also has "not plausibly alleged how [Officer Willis was] involved in the decision to institute criminal proceedings." *Simmons v. Roxbury Police Dep't*, No. 17-2526, 2017 WL 5188060, at *7 (D.N.J. Nov. 9, 2017).[29]

Further, under Section 1983, Plaintiff's claim for malicious prosecution against Officer Willis fails because Plaintiff did not allege that he suffered a deprivation of liberty consistent with the concept of seizure because of the underlying legal proceeding. "[A]ttendance at trial [does] not

---

[29] Although Plaintiff alleges that Officer Willis wrote the summonses following the Traffic Stop, he also alleges that Officer Willis was not involved in discriminatory activity during the February Trial, stating, "[d]uring the Plaintiff's cross of Officer Willis, Judge Dowd, serving as the latter's personal attorney at the hearing, continuously kept giving reasons and answers for Officer Willis [sic] conduct, not allowing him to answer any of the Plaintiff's questions (apparently, they didn't think Officer Willis, as a black man, was competent or capable enough to speak for himself or maintaining their conspiracy of making Plaintiff guilty of something on record in his testimony)." (FAC ¶ 105.)

qualify as a Fourth Amendment seizure" for purposes of a malicious prosecution claim. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005).

### 2. West Orange

Insofar as this claim is premised on Section 1983, Plaintiff also fails to state a claim against the Township.[30] "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom."[31] *St. Fleur v. City of Linden, New Jersey*, No. 15-1464, 2019 WL 4126748, at *8 (D.N.J. Aug. 30, 2019) (citing *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)); *Monell*, 436 U.S. at 691. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *St. Fleur*, 2019 WL 4126748, at *8 (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

Although Plaintiff vaguely asserts that "Defendants have customs and policies under color of state law that give preferential treatment to white males to the detriment of others, including those of color" (FAC ¶ 168), Plaintiff does not tie these customs and policies to the alleged malicious prosecution. Nor does Plaintiff allege that the municipality was the moving force behind the underlying legal proceedings regarding the traffic tickets. *See Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("A plaintiff must [ ] allege that the policy or custom was the 'proximate cause' of his injuries"). Plaintiff's allegation that West Orange has a "history of race discrimination and stereotyping as reflected by the public records" (FAC ¶ 47; *see also id.* Ex. D) is insufficient to plead a policy or custom that caused injury from malicious prosecution.

---

[30] In addition to immunity under N.J. Stat. Ann. § 59:2–2(b), *see supra* n.24, West Orange cannot be held liable where its employee's acts or omissions constitute "a crime, actual fraud, actual malice, or willful misconduct," N.J. Stat. Ann. § 59:2-10.

[31] Plaintiff cannot maintain a Section 1983 or NJCRA claim against West Orange on the basis of *respondeat superior*. *Ingram v. Twp. of Deptford*, 911 F.Supp.2d 289, 297–98 (D.N.J. 2012).

For the foregoing reasons, Plaintiff's malicious prosecution claims against Officer Willis and West Orange (Count 9) are **DISMISSED without prejudice.**

### G.  Misconduct in Office in Violation of N.J. Stat. Ann. § 2C:30-2 and N.J. Stat. Ann. § 40A:14-147 (Count 4)[32]

Plaintiff's claim for official misconduct arising under N.J. Stat. Ann. § 2C:30-2 and N.J. Stat. Ann. § 40A:14-147 is dismissed for failure to state a claim.

Section 2C:30-2[33] does not provide a private cause of action. *Severino v. Middlesex Cnty. Prosecutor's Off.,* No. 19-19164, 2020 WL 5517539, at *5 (D.N.J. Sept. 14, 2020). "Courts have previously analyzed the statute and found that Congress did not provide a private right of action, nor is a private right of action implied." *Id.* (citing *McBride v. Twp. of Washington*, No. 19-17196, 2020 WL 3396802, at *4 (D.N.J. Jun. 19, 2020)) ("[N]o private right of action exists under N.J. Stat. Ann. § 2C:30-2."); *Jones v. Somerset Cnty. Prosecutor's Off.*, No. 15-2629, 2017 WL 1337432, at *9 (D.N.J. Apr. 7, 2017) (dismissing a claim under § 2C:30-2 because a "[p]laintiff has no private right of action to enforce alleged violations of the criminal code").

Plaintiff's claim pursuant to N.J. Stat. Ann. § 40A:14-147[34] also fails. This provision governs the procedure a police department must follow for the suspension or removal of police

---

[32] This claim also allegedly arises out of the New Jersey Constitution.  Plaintiff's constitutional claims are time-barred. *See supra* Section III.D.

[33] Section 2C:30-2 states:

> A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
> b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
> Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.

[34] N.J. Stat. Ann. § 40A:14-147 states:

> Except as otherwise provided by law, no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the

officers. *See Del Turco v. Randolph Twp. Police Dep't*, No. 18-15086, 2020 WL 999210, at *9 (D.N.J. Mar. 2, 2020). Plaintiff's claims are patently inapplicable to this statute.

Therefore, Plaintiff's claim for official misconduct arising under N.J. Stat. Ann. § 2C:30-2 and N.J. Stat. Ann. § 40A:14-147 (Count 4) against Defendants Officer Willis, Wenzel, Judge Dowd, and Judge Batista is **DISMISSED without prejudice.**

### H.  Presentation of False Information (Count 16)

Plaintiff brings a claim he calls "Presentation of False Information" against the Township, WOPD, Officer Willis, Judge Dowd, and Wenzel. Plaintiff appears to allege that this claim arises under the False Claims Act ("FCA"). (*See* FAC ¶ 278 ("The False Claims Act defines 'knowing' as including a defendant's 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard' of the truth or falsity of information in the defendant's claim to the Government").)

The FCA "imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023). "The government may bring a direct suit to recover damages resulting from fraudulent claims or, '[a]lternatively, a private plaintiff [known as a relator] may bring a *qui tam* action on behalf of the government to recover losses incurred because of fraudulent claims." *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 190 (3d Cir. 2022) (alterations in original) (quoting *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 185 (3d Cir. 2001)).

There are no allegations in the FAC even remotely suggesting that any party presented false or fraudulent claims for payment to the federal government. If Plaintiff is attempting to assert a

---

government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as hereinbefore provided and then only upon a written complaint setting forth the charge or charges against such member or officer.

claim based on Defendants' allegedly false statements, this claim is duplicative of Plaintiff's claims for defamation (Count 15) and casting Plaintiff in a false light (Count 3). (*See supra* Section III.E(1)(i).)

Therefore, Plaintiff's "presentation of false information" claim (Count 16) against Defendants West Orange, Officer Willis, Wenzel, and Judge Dowd is **DISMISSED without prejudice.**

### I.   Declaratory Relief Pursuant to 28 U.S.C. § 2201 (Count 23)

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, declaratory judgment is inappropriate solely to adjudicate past conduct. *Corliss v. O'Brien*, 200 F. App'x 80, 84–85 (3d Cir. 2006) (citing *Gruntal & Co., Inc. v. Steinberg,* 837 F. Supp. 85, 89 (D.N.J. 1993)). "Nor is declaratory judgment meant simply to proclaim that one party is liable to another. *Corliss*, 200 F. App'x at 84 (citing *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1553–54 (Fed. Cir. 1994) (en banc) (concluding that the plaintiff's prayer for a "declaration" of a regulatory taking was "different from a formal declaration under the Declaratory Judgement Act.")).

The declaratory relief that Plaintiff seeks here is a request for a proclamation that Defendants discriminated against him and are required to compensate him for injuries suffered as a result. (*See* FAC 344.)  This declaration is improper because it (1) focuses on past conduct and (2) asks the Court to proclaim Defendants are liable.  *See Corliss*, 200 F. App'x at 84. For these reasons, Plaintiff's claim for declaratory relief against Defendants West Orange, Officer Willis, Wenzel, Judge Dowd, and Judge Batista (Count 23) is **DISMISSED without prejudice.**

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss (ECF 48, ECF 49) are **GRANTED.** Plaintiff's claims against Defendants Township of West Orange, Officer Gregory Willis, Joseph Wenzel, Judge Dennis O. Dowd, J.M.C., and Judge Arthur J. Batista, J.S.C. are **DISMISSED without prejudice**. Plaintiff's claims against Defendant West Orange Police Department are **DISMISSED with prejudice**. An appropriate order accompanies this opinion. Within thirty (30) days, Plaintiff may file an amended complaint addressing the deficiencies identified in this Opinion.


*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:       James B. Clark, U.S.M.J.
           Parties